Kenneth M. Trujillo-Jamison (Bar No. 280212)
ktrujillo-jamison@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, California 90017
Telephone: (213) 955-9240
Facsimile: (213) 955-9250

Attorneys for Defendants
X.AI LLC and X.AI Corp.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVIN ROSE,<br>On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>X.AI LLC and X.AI Corp.,<br><br>Defendants. | Case No.: 5:26-cv-05648-NW<br><br>Hon. Noël Wise<br><br>**DEFENDANTS X.AI LLC AND X.AI CORP.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Date: October 21, 2026<br>Time: 9:00 a.m.<br>Ctrm: 3<br><br>Complaint Filed: June 11, 2026 |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ....................................................................................................1

II. ARGUMENT ...........................................................................................................2

A. Plaintiff Contests Only Contract Formation; He Concedes Every Other Ground for the Motion ..........................................................................................................2

B. xAI's Notice Was Reasonably Conspicuous ..........................................................3

1. The transactional context strongly favors notice—as *Skaggs* itself found ................................................................................................3

2. The screen's design gave conspicuous notice: an uncluttered, no-scroll page with underlined, high-contrast hyperlinks ................................4

3. The notice sits within the natural flow of an account-creation screen; *Chabolla* is not to the contrary ..................................................8

4. *Skaggs* does not control this case ..........................................................10

C. Plaintiff Unambiguously Manifested His Assent ..................................................11

D. The Unopposed Grounds Independently Require Granting the Motion in Full ..................................................................................................................13

III. CONCLUSION ........................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.A. v. Roku, Inc.*
No. 25-cv-06284-NW, 2026 WL 1349064 (N.D. Cal. May 14, 2026) .................................. 13

*Ai v. Tencent Am. LLC*
No. 26-cv-02498-NW, 2026 WL 2170875 (N.D. Cal. July 28, 2026) .................................. 13

*B.D. v. Blizzard Ent., Inc.*
76 Cal. App. 5th 931 (2022) .................................................................................... 3, 4, 10

*Berman v. Freedom Fin. Network, LLC*
30 F.4th 849 (9th Cir. 2022) ........................................................................................ *passim*

*Camreta v. Greene*
563 U.S. 692 (2011) ............................................................................................................ 10

*Chabolla v. ClassPass Inc.*
129 F.4th 1147 (9th Cir. 2025) ....................................................................................... 1, 3, 8

*Godun v. JustAnswer LLC*
135 F.4th 699 (9th Cir. 2025) ....................................................................................... *passim*

*Henry Schein, Inc. v. Archer & White Sales, Inc.*
586 U.S. 63 (2019) ........................................................................................................ 2, 13

*Holmes v. Cal. Army Nat'l Guard*
920 F. Supp. 1510 (N.D. Cal. 1996) ........................................................................................ 1

*Houtchens v. Google LLC*
649 F. Supp. 3d 933 (N.D. Cal. 2023) .................................................................................. 10

*Javier v. Assurance IQ, LLC*,
No. 4:20-cv-02860-JSW, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ...................................... 4

*Keebaugh v. Warner Bros. Ent. Inc.*
100 F.4th 1005 (9th Cir. 2024) ................................................................................ 3, 4, 5, 10

Kroskey v. Elevate Labs, LLC
No. 5:24-cv-08113-EJD, 2025 WL 1507091 (N.D. Cal. May 27, 2025) .......................... *passim*

*Lee v. Plex Inc.*
773 F. Supp. 3d 755 (N.D. Cal. 2025). ............................................................................. 11, 12

*Massel v. Successfulmatch.com*
24-1870, 2025 WL 2452371 (9th Cir. Aug. 26, 2025) ......................................................... 4, 5

*Oberstein v. Live Nation Ent., Inc.*
60 F.4th 505 (9th Cir. 2023) ....................................................................................... *passim*

*Patrick v. Running Warehouse, LLC*
93 F.4th 468 (9th Cir. 2024) ...................................................................................... 4, 5, 11

*Pi v. Embark Veterinary, Inc.*
No. 5:24-cv-07384-NW, ECF No. 40 (N.D. Cal. June 26, 2025) ........................................... 13

*Ramirez v. Ghilotti Bros. Inc.*
941 F. Supp. 2d 1197 (N.D. Cal. 2013)........................................................................... 2

*Rent-A-Center, West, Inc. v. Jackson*
561 U.S. 63 (2010) ........................................................................................... 2, 13

*Sellers v. JustAnswer LLC*
73 Cal. App. 5th 444 (2021)......................................................................................... 3

*Skaggs v. X.AI, LLC*
No. 26-cv-04550-BLF, 2026 WL 2352969 (N.D. Cal. Aug. 13, 2026) ........................... *passim*

*Smith v. Spizzirri*
601 U.S. 472 (2024) .............................................................................................. 13

**Statutes**

9 U.S.C. §§ 3–4.......................................................................................................... 14

## I. INTRODUCTION

Plaintiff's Opposition[1] rests almost entirely on a single, non-binding district court decision: *Skaggs v. X.AI, LLC*, No. 26-cv-04550-BLF, 2026 WL 2352969 (N.D. Cal. Aug. 13, 2026).[2] *Skaggs* is a narrow decision that arose on a different motion, on a different record, brought by a different plaintiff. Those differences tip the scale in favor of xAI here.

*First*, the *Skaggs* court found that the *transactional context*—the first component of the reasonable-conspicuousness inquiry—"favors reasonable notice," because "a user who affirmatively chooses to make an account when doing so is optional and recurrently uses the corresponding web service should reasonably contemplate 'some sort of continuing relationship' accompanied by terms and conditions." 2026 WL 2352969, at *5 (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023)). Here, Rose not only created an account, he, unlike the plaintiff in *Skaggs*, later bought a paid Grok subscription—the paradigm of a "continuing relationship." *Second*, Rose's three-sentence declaration (1) never denies seeing the notice, (2) never denies clicking a "Sign up" button to create his xAI account, and (3) describes nothing about his experience. The conspicuousness inquiry under *Berman* is objective, and xAI's evidence of the screen and the gated flow is effectively unrebutted. *Third*, the *Skaggs* court also acknowledged that the contrast between xAI's white hyperlinks and its black background "is notable," and that the "notice-giving function of Defendant's chosen font size, color, and stylization is a closer call." *Id.* at *6–7. What ultimately swayed the *Skaggs* court's decision was an extension of *Chabolla*'s "natural flow" reasoning. Respectfully, the Court should decline to adopt that extension here, given the totality of these circumstances that were not present in *Skaggs*.

---

[1] Plaintiff filed his Opposition at 7:31 p.m. on August 27, 2026, and it therefore was untimely and may be struck. *See* Standing Order for All Civil Cases Before District Judge Noël Wise § C ("All filing deadlines are at 5:00 p.m. unless otherwise ordered."); *Holmes v. Cal. Army Nat'l Guard*, 920 F. Supp. 1510, 1519 (N.D. Cal. 1996) ("[t]he district court has the discretion to strike untimely papers where the late-filing party fails to demonstrate excusable neglect").

[2] The *Skaggs* order issued on August 13, 2026, after this Motion was prepared and shortly before xAI filed it later that same day. xAI addresses *Skaggs* fully in this Reply.

The Opposition is silent on all the other issues raised in the Motion—and that silence is dispositive of nearly everything. Plaintiff does not contest that the February 14, 2025 Terms contain a valid arbitration agreement with a clear and unmistakable delegation clause; that all of his nine claims fall within its scope; that X.AI Corp. may enforce it; or that a stay is mandatory if the Motion is granted. Opp. at 11 n.5. The only question Plaintiff puts before the Court is contract formation. On this record—a compact, uncluttered account-creation screen whose only purpose is to form an ongoing relationship, a conspicuous notice visible without scrolling, and a plaintiff who does not deny seeing it or clicking a "Sign up" button beneath it—that question should be answered in xAI's favor, and every remaining question belongs to the arbitrator.

## II. <u>ARGUMENT</u>

### A. Plaintiff Contests Only Contract Formation; He Concedes Every Other Ground for the Motion

The Opposition disputes only one thing: whether an agreement was formed on the Grok sign-up screen. Plaintiff expressly declines to address xAI's remaining arguments, asserting they are "mooted" by his formation challenge. Opp. at 11 n.5. That is a concession that, if the Court finds an agreement was formed, the Motion must be granted in full. *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (treating the failure to respond to an argument as a concession and collecting cases).

The concession matters because of what it leaves untouched. The delegation clause—which Plaintiff nowhere challenges—commits to the arbitrator "exclusive authority to resolve any disputes relating to the scope, interpretation, applicability, enforceability, or formation of this Arbitration Agreement," including "all threshold arbitrability issues" and "any defense to arbitration." Murphy Decl. Ex. A at 4. Once it is established that an agreement has been formed, *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–72 (2010), and *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019), leave the Court "no power" to decide anything else. Plaintiff has thus staked his entire opposition

on the formation question. As shown below, that question should be answered in xAI's favor on this record.

**B. xAI's Notice Was Reasonably Conspicuous**

Under *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849 (9th Cir. 2022), courts must analyze notice "under the objective, totality-of-the-circumstances standard." *Oberstein*, 60 F.4th at 514 (citing *Berman*, 30 F.4th at 856–58). Notice is reasonably conspicuous where it is "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Berman*, 30 F.4th at 856. The inquiry considers both "the context of the transaction" and the "traditional inquiry related to the visuals involved with the notice, such as font size, text placement, and overall screen design." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025) (quoting *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1019 (9th Cir. 2024)). Critically, the Ninth Circuit has "not created a checklist for website designers" and no "per se design rules that must be followed for a contract to be formed between a website user and provider." *Godun v. JustAnswer LLC*, 135 F.4th 699, 710 (9th Cir. 2025)). Both components support xAI here.

*1. The transactional context strongly favors notice—as* Skaggs *itself found*

The context of the transaction is "important . . . to consider and is key to determining the expectations of a typical consumer." *Keebaugh*, 100 F.4th at 1019 (citing *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 947 (2022)). Where a transaction "contemplates entering into a continuing, forward-looking relationship" governed by terms and conditions, a reasonably prudent user expects—and looks for—linked terms. *B.D.*, 76 Cal. App. 5th at 951; *see also Oberstein,* 60 F.4th at 517 (creating an account through a "full registration process" signals an ongoing relationship); *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 471 (2021) (sign-up for ongoing service distinguishes cases involving one-off purchases).

Rose's transaction sits at the continuing-relationship end of that spectrum. He navigated to a screen titled "Create your account"—the largest text on the page—and affirmatively established an account with a conversational AI service. Murphy Decl. ¶¶ 13,

21. Creating an account was Plaintiff's choice, made to establish a persistent relationship with xAI's Grok. The nature of that relationship is confirmed by what followed: Rose used his account and later purchased a paid SuperGrok subscription. Compl. ¶¶ 25, 105. This is precisely the "continuing relationship" context in which the Ninth Circuit and California courts expect users to anticipate contractual terms. *Keebaugh*, 100 F.4th at 1020; *Oberstein*, 60 F.4th at 517; *B.D.*, 76 Cal. App. 5th at 951.

*Skaggs* found this exact factor "favors reasonable notice" on even thinner facts—a free-tier user who never paid for a Grok subscription. 2026 WL 2352969, at *5. Plaintiff's only response is to relocate the argument: he says transactional context "is relevant at step one of the inquiry-notice online contract formation test, not step two." Opp. at 11 (quoting *Godun*, 135 F.4th at 713). *Godun* confirms the factor's relevance; it does not diminish it. And at step one, the transactional context supports a finding of reasonable conspicuousness.

*2. The screen's design gave conspicuous notice: an uncluttered, no-scroll page with underlined, high-contrast hyperlinks*

*First*, the screen is the opposite of the cluttered pages that fail *Berman*. The entire desktop screen contains a handful of elements, all centered in a single column on a black background: the heading "Create your account," four sign-up buttons, a one-line sign-in link, and the Terms of Service notice. Murphy Decl. ¶ 21. There are no advertisements, no promotional graphics, no competing offers, and the notice is visible without any scrolling or navigation by the user. *Id.* In *Berman*, by contrast, the notice failed because it was in "tiny gray font" on pages "cluttered" with "other visual elements [that] draw the user's attention away from the barely readable critical text." 30 F.4th at 856–57. Courts in this Circuit routinely sustain notices on clean, focused screens like this one. *See Keebaugh*, 100 F.4th at 1021 (notice conspicuous on uncluttered launch screen); *Massel v. Successfulmatch.com*, No. 24-1870, 2025 WL 2452371, at *1–2 (9th Cir. Aug. 26, 2025) (notice conspicuous on uncluttered account-creation screen); *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (notice on "an uncluttered page . . . not hidden or obscured"); *Javier v. Assurance IQ, LLC*, No. 4:20-cv-02860-JSW, 2021 WL 940319, at *3 (N.D. Cal. Mar. 9,

2021) (page "uncluttered, with only a few entry fields followed by the disclosure on a single page").

*Second*, the hyperlinks are conspicuously "set apart" from the surrounding text by the conjunction of multiple signals: they are underlined—the classic and universally understood marker of a hyperlink—and they are rendered in brighter white against the gray text of the other words in the notice, all atop a black background whose contrast even *Skaggs* acknowledged "is notable." 2026 WL 2352969, at *7. Indeed, "Terms of Service" and "Privacy Policy" are the *only* underlined text on the *entire screen*. Murphy Decl. ¶ 21. A reasonable user encountering the sole underlined phrases on an otherwise spare page understands them to be clickable.

Plaintiff's contrary argument reduces largely to the color of the links—that they are white, not blue. But the Ninth Circuit has never required blue hyperlinks, and it has repeatedly enforced notices whose links used no color contrast at all, so long as *other* indicia identified them as hyperlinks and the page did not bury them. *See Keebaugh*, 100 F.4th at 1010–11, 1020–21 (enforcing white hyperlinks on a dark background as "conspicuously distinguished"); *Massel*, 2025 WL 2452371, at *1–2 (enforcing notice even without blue or capitalized hyperlinks); *Patrick*, 93 F.4th at 477 (what matters is that styling "suggest[s] clearly that it is a hyperlink"). Indeed, *Godun* forecloses the very argument Plaintiff presses: there are no "per se design rules," and treating blue text or any other single design element as mandatory would erect exactly the "checklist for website designers" the Ninth Circuit has disclaimed. 135 F.4th at 710.

*Third*, Plaintiff's remaining design points (font size; the surrounding text's gray color) cannot carry his burden on this screen. The notice is a full-width, centered, single-sentence line on a page with almost no other text—not "buried" among competing content. *Berman* condemned notices "buried in fine print" on busy pages, 30 F.4th at 857; it did not hold that the shortest text on a minimalist page is invisible as a matter of law. And, despite the court's view in *Skaggs*, the gray-on-black notice frames two bright-white underlined hyperlinks: the design draws the eye *toward* the operative links, not away from them.

One case merits closer examination. In *Kroskey v. Elevate Labs, LLC*, No. 5:24-cv-08113-EJD, 2025 WL 1507091, *4 (N.D. Cal. May 27, 2025), the court found that the sign-up screen—strikingly similar xAI's sign-up screen here—provided sufficient notice. The Kroskey notice was "free from clutter" and contained "four simple boxes where users can choose how to set up an account, separated by significant white space surrounding the Terms & Conditions notice." *Id.* The hyperlinks were not "buried in text or otherwise placed in a confusing location." *Id.* Rather, the notice was the only text in the bottom open space of the page. *Id.* Finally, the hyperlinks were distinguished (bold, not underlined), further setting them "apart from the other text in the sentence." *Id.* A screenshot of the *Kroskey* notice is below—with set-up and framing closely resembling xAI's sign-up screen, as also shown below:


Sign up
Continue with Apple
Continue with Google
Continue with Facebook
Continue with Email
By creating your account, you agree to Balance's
Terms & Conditions and Privacy Policy




### 3. *The notice sits within the natural flow of an account-creation screen;* Chabolla *is not to the contrary*

Plaintiff's placement argument—that the notice "sits outside the user's natural flow"—rests entirely on *Chabolla*. But *Chabolla* condemned a materially different screen, and its reasoning confirms notice here.

In *Chabolla*, the notice appeared on the *first* screen of a *multi-step* marketing funnel, where the user was asked only to enter an email address to claim a promotional offer. The Ninth Circuit emphasized that "[i]t is not apparent that a user agrees or commits to anything on screen 1 other than sharing her email address." 129 F.4th at 1157. Because nothing about

the screen signaled contract formation, a notice sitting "on the periphery"—beneath a "Sign up with Facebook" button irrelevant to a user proceeding by email—could "fade into the irrelevancy of other aspects of the page." *Id.* The problem was not merely the placement; it was that the notice was visually tethered to a path the user was not taking, on a screen that did not look like a commitment.

xAI's account sign-up screen is the opposite in both respects. Its heading—"Create your account"—announces contract formation as the *only* purpose of the page. A user deciding *how* to create his account (with X, email, Apple, or Google) is choosing among four parallel doors into the same relationship; the notice below the button column—"By continuing, you agree to xAI's Terms of Service and Privacy Policy"—is not tethered to any one door. Thus, the notice applies to all of them, and it is the concluding line of the same compact, centered column the user has been reading from the top of the page. Murphy Decl. ¶ 21. A reasonably prudent user surveying a short single-column page to select his sign-up method sees the whole column—including its final line, visible without scrolling. That is the "natural flow" of an account-creation screen.

*Skaggs* reasoned that a user would stop reading at his chosen button, and that the line "Already have an account? Sign in" would end his attention before the notice. 2026 WL 2352969, at *6. xAI respectfully disagrees. On a page this spare, "the court can fairly assume that a reasonably prudent Internet user would have seen" the notice. *Berman*, 30 F.4th at 856. The intervening sign-in line is a single centered sentence with the notice as the very next element on an otherwise uncluttered screen with no scrolling required. Notably, neither *Chabolla* nor any other Ninth Circuit decision imposes a rule about notice placement after sign-up buttons—to the contrary, sign-in wraps remain enforceable, *Chabolla*, 129 F.4th at 1154, and *Godun* rejects "per se design rules," 135 F.4th at 710. Moreover, the *Kroskey* court found sufficient notice where the terms were positioned below multiple sign-up options—like xAI's sign-up page at issue here. 2025 WL 1507091, at *4.

*4.* Skaggs *does not control this case*

Plaintiff asks this Court to treat *Skaggs* as though it decided this Motion. It did not, for at least four reasons.

Skaggs *is not binding.* A district court decision "is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (citation omitted). This Court owes *Skaggs* respectful consideration, not deference.

*There is a stronger transactional context here*. *Skaggs* found the context factor *favored xAI* on a free-tier user's facts. Rose went further: he created an optional account, used Grok, and then bought a paid SuperGrok subscription—the paradigm "continuing relationship" under *Keebaugh*, *Oberstein*, and *B.D.*. That factor carries even greater weight here.

*Plaintiff's declaration lacks facts showing he did not agree to the Terms.* Plaintiff's three-sentence declaration says only that he created an account on his personal computer on or around March 11, 2025. Declaration of Devin Rose (ECF No. 23-1; "Rose Decl.") ¶¶ 1–3. He does not deny seeing the notice. He does not deny clicking a "Sign up" button. He does not describe the screen he saw, claim confusion, or assert that he was unaware of the Terms.[3] The conspicuousness inquiry is objective, *Berman*, 30 F.4th at 856, and, here, the totality of the circumstances and xAI's unrebutted evidence of the screen and the sign-up flow favor xAI.

Skaggs *itself shows the balance is different here.* The holding in *Skaggs* is narrow. The court found that the transactional context "favors reasonable notice," acknowledged that the contrast between xAI's white hyperlinks and the black background "is notable," and described the "notice-giving function of Defendant's chosen font size, color, and stylization" as "a closer call." 2026 WL 2352969, at *5–7. What tipped that close balance was a single

[3] Even if Plaintiff claimed he did not recall seeing the notice, such lack of recollection cannot defeat business records of a gated sign-up flow. *See Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 942 (N.D. Cal. 2023).

factor: the court's extension of *Chabolla*'s "natural flow" reasoning to hold that a user would stop reading at his chosen sign-up button and not see the notice below. *Skaggs*, 2026 WL 2352969, at *6. This Court need not reject *Skaggs*'s analysis to grant this Motion; it need only decline to extend that placement rationale because of a stronger transactional context and a plaintiff who—unlike the plaintiff in *Skaggs*—does not deny seeing the notice or clicking the button beneath which it appeared.

### C. Plaintiff Unambiguously Manifested His Assent

Because the notice was reasonably conspicuous, the remaining question is whether Rose took "some action . . . that unambiguously manifests his . . . assent." *Berman*, 30 F.4th at 856. He did. xAI's records show he created his account on March 11, 2025 and logged in and used it that day. Murphy Decl. ¶ 13. He could not have created his account without clicking a sign-up button on the screen bearing the notice. *Id.* ¶¶ 19–21 ("creating an account with Grok required users, including Plaintiff, to agree to the Terms"). Rose admits he created the account, Rose Decl. ¶ 3, and, again, does not deny he clicked a sign-up button on the screen bearing the notice. Clicking a button that a conspicuous notice ties to acceptance of linked terms is the paradigmatic act of assent. *Patrick*, 93 F.4th at 477; *Oberstein*, 60 F.4th at 515–17.

Plaintiff's only rejoinder is a claimed mismatch: the notice says a user agrees to the Terms "[b]y continuing," while the buttons say "Sign up." Opp. at 10. The mismatch cases do not support him; they police a different problem, and the logic runs in xAI's favor here. In *Chabolla*, the notice said the user agreed "[b]y signing up," but the button said only "Continue," so a user could click "Continue" without understanding that she was *signing up* for anything, on a screen that did not otherwise signal commitment. 129 F.4th at 1158. The ambiguity concealed the commitment. In *Lee v. Plex, Inc.*, the notice named two specific triggering acts—"creating an account or continuing to use a Plex application"—and the user's actual click ("Continue with Facebook" on a sign-in screen) matched neither. 773 F. Supp. 3d 755, 767 (N.D. Cal. 2025). In each case, the user's action fell *outside* the notice's description of what would bind her.

Here, there is no ambiguity. The notice's trigger—"continuing"—describes *every* action available on the screen: there is nothing a user can do on the "Create your account" page except continue (or leave). And the specific act Rose took was clicking a button labeled "Sign up"—the single most commitment-signaling act in the online-contracting taxonomy. A user who clicks "Sign up" on a screen headed "Create your account," above a notice stating that "[b]y continuing" he agrees to linked Terms, cannot plausibly claim confusion about whether his act constituted the "continuing" to which the notice referred. *Godun* requires that the button "match[] an advisal's explanation," 135 F.4th at 713—a match of substance, not of wording. Clicking "Sign up" *is* continuing. The concern animating *Chabolla*—that a user might act without knowing the act binds—has no relevance where every available act binds and the user's chosen act announces commitment on its face.

The Ninth Circuit has enforced this precise formulation. In *Lee v. Ticketmaster L.L.C.*, the court held that a user was bound to the relevant terms where the notice stated, "By continuing past this page, you agree to our Terms of Use," beneath a "Sign In" button. 817 F. App'x 393, 394–95 (9th Cir. 2020). Plaintiff dismisses *Ticketmaster* as unpublished and pre-*Chabolla*, Opp. at 11, but neither *Chabolla* nor *Godun* disapproved it, and nothing in either decision announces a verbatim-match requirement that would condemn "by continuing" notices as a class. Indeed, *Kroskey*, decided after *Chabolla*, found assent with mismatched words—*i.e.*, the action buttons said "continue" but the notice said "[b]y *creating* your account." 2025 WL 1507091, at *4 (emphasis added).

Finally, if the Court concludes the sign-up language presents any genuine question, the answer is supplied by the screen itself, read as a whole and in context: a single-purpose account-creation page, a conspicuous notice, and an affirmative click that gated account creation. Murphy Decl. ¶¶ 19–21. That is "unambiguous[] manifest[ation]" under *Berman*. 30 F.4th at 856–57.

**D. The Unopposed Grounds Independently Require Granting the Motion in Full**

Because Plaintiff has not contested them, the following points require only brief confirmation:

*Delegation.* The Arbitration Agreement clearly and unmistakably delegates all threshold issues—scope, applicability, enforceability, unconscionability, and "any defense to arbitration"— to the arbitrator. Murphy Decl. Ex. A at 4; *see Rent-A-Ctr.*, 561 U.S. at 68–69; *Henry Schein*, 586 U.S. at 68. This Court has enforced materially identical delegation language. *Pi v. Embark Veterinary, Inc.*, No. 5:24-cv-07384-NW, slip op. at 9–10 (N.D. Cal. June 26, 2025) (Wise, J.); *A.A. v. Roku, Inc.*, No. 25-cv-06284-NW, 2026 WL 1349064, at *4 (N.D. Cal. May 14, 2026) (Wise, J.). Any argument Plaintiff has not raised here—and any he might later conceive—belongs to the arbitrator.

*Scope.* All nine claims arise out of or relate to the Terms and the Service; Plaintiff does not argue otherwise. Mot. at 9–10; *see* Opp.

*X.AI Corp.* Plaintiff does not dispute that X.AI Corp. may enforce the Arbitration Agreement under agency and equitable-estoppel principles, given the Complaint's own "unified enterprise" allegations. Compl. ¶¶ 31, 33, 35; *Kroskey*, 2025 WL 1507091, at *5; *Roku*, 2026 WL 1349064, at *3–4; Mot. at 10–11.

*Stay.* A stay is mandatory upon request once the Court finds an arbitrable dispute. *Smith v. Spizzirri,* 601 U.S. 472, 478 (2024); *see A.A. v. Roku,* 2026 WL 1349064, at *4–5; *Ai v. Tencent Am. LLC*, No. 26-cv-02498-NW, 2026 WL 2170875, at *4–6 (N.D. Cal. July 28, 2026) (Wise, J.).

## III. CONCLUSION

Plaintiff chose to create an xAI account on a screen built for exactly one purpose, beneath a conspicuous notice that linked the governing Terms, and he never opted out of the Arbitration Agreement those Terms contain. His Opposition disputes nothing else. Defendants respectfully request that the Court compel Plaintiff to arbitrate his claims on an

individual basis and stay this action pending completion of arbitration pursuant to 9 U.S.C. §§ 3–4.

Respectfully submitted,

Dated: September 3, 2026

WILLENKEN LLP

By: *__/s/ Kenneth M. Trujillo-Jamison__*
Kenneth M. Trujillo-Jamison
*Attorneys for Defendants X.AI LLC and X.AI Corp.*