United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEVIN ROSE,
Plaintiff,
v.
SPACEXAI LLC, et al.,
Defendants.

Case No. 26-cv-05648-NW

**ORDER DENYING MOTION TO COMPEL ARBITRATION**

Re: ECF No. 19

Plaintiff Devin Rose, on behalf of himself and a prospective class of others similarly situated, alleges that Defendants SpaceXAI LLC and X.AI Corp. ("Defendants" or "xAI") employ "deceptive and illegal 'automatic renewal' tactics to trick consumers" into signing up for "unwanted, pricey subscriptions" to xAI's SuperGrok chatbot. ECF No. 1 ("Compl.") ¶ 1.

Now before the Court is Defendants' motion to compel arbitration of Plaintiff Rose's claims. ECF No. 19 ("Motion"). Defendants argue that Rose agreed to binding arbitration when creating his free Grok account on xAI's website. *Id.* Rose contends that he is not bound by the xAI terms of service because they were not conspicuously disclosed to him during the Grok account sign up process on xAI's website.

Defendants' motion to compel arbitration is fully briefed, and the Court held a hearing on October 20, 2026. ECF Nos. 23 ("Opposition), 24 ("Reply").

For the following reasons, the Court DENIES the motion.

## I. BACKGROUND[1]

On March 11, 2025, Plaintiff Rose signed up for a free account on the xAI website to use

[1] The facts are taken from Plaintiff's complaint unless otherwise noted. *See* Compl.

Defendants' artificial intelligence chat bot, Grok. Rose signed up for the account using his email address. Declaration of Barry Murphy in Support of Defendants X.AI LLC and X.AI Corp.'s Motion to Compel Arbitration, ECF No. 19-1 ¶ 13 ("Murphy Decl.").

On July 12, 2025, Rose paid $30.00 for a one-month subscription to Defendants' "SuperGrok" service, which provides features not available in a free Grok account. *See* Murphy Decl. ¶¶ 9–10. Rose alleges that it was not clear when he signed up for SuperGrok that the subscription would automatically renew until he cancelled it. When Rose tried to cancel his SuperGrok subscription, the "process was so difficult, lengthy, and confusing that [he] was unable to cancel." Compl. ¶ 108. Though he wanted to cancel, Rose alleges he was charged $30.00 per month for the subscription for the next three months. Rose states he would not have signed up for a SuperGrok subscription had he known in advance about Defendants' "intentionally misleading subscription practices." *Id.* ¶ 112.

In his June 1, 2026 complaint, Rose claims Defendants employ "deceptive and illegal" tactics to "trick consumers" into signing up for paid subscriptions to xAI's SuperGrok chatbot. *Id.* ¶ 1. Rose seeks to represent a class of similarly situated SuperGrok subscribers in the United States who "were automatically renewed and charged for at least one month of a SuperGrok Subscription. . . ." *Id.* ¶ 121.

On August 13, 2026, Defendants moved to compel arbitration of all Rose's claims. Defendants argue that when Rose created his free Grok account on the xAI website on March 11, 2025, he agreed to arbitrate "any claims arising out of or relating to [xAI's "Terms of Service"] or [xAI's] Service [including his interactions with Grok], regardless of when the claim arose." Motion, at 5; Murphy Decl. ¶¶ 7–9. The arbitration clause in the Terms of Service states in relevant part:

> READ THIS SECTION CAREFULLY BECAUSE IT REQUIRES THE PARTIES TO ARBITRATE THEIR DISPUTES AND LIMITS THE MANNER THAT YOU CAN SEEK RELIEF FROM XAI. You and xAI agree to the following mandatory arbitration and class action waiver provisions:
>
> MANDATORY ARBITRATION. You and xAI agree to resolve any claims arising out of or relating to these Terms or our Service, regardless of when the claim arose, even if it was before these Terms existed (a "Claim"), through final and binding arbitration (this

> "Arbitration Agreement"). You may opt out of arbitration within 30 days of account creation or of any updates to these Terms within 30 days after the update has taken effect by emailing us at legal@x.ai with your full, legal name and stating your intent to opt out of this Arbitration Agreement. . . . You and we agree that the Arbitrator, and not any federal, state, or local court or agency, will have exclusive authority to resolve any disputes relating to the scope, interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable. The Arbitrator will also be responsible for determining all threshold arbitrability issues, including issues relating to whether these Terms are, or whether any provision of these Terms is, unconscionable or illusory, and any defense to arbitration, including waiver, delay, laches, unconscionability, and/or estoppel.

Murphy Decl. ¶ 14 & Ex. A.

Rose does not dispute that he created a Grok account on xAI's website on March 11, 2025, and that he signed up for a paid subscription to SuperGrok on July 12, 2025. *See* Opposition, at 5. Instead, Rose contends that his creation of a Grok account did not bind him to the xAI terms of service, including its arbitration provision, because Defendants provided insufficient notice of the terms of service during the Grok account creation process, and Rose therefore could not have assented to them. *Id.* at 5–6.

Defendants' motion to compel arbitration is fully briefed. On October 20, 2026, the Court held a hearing on the motion. *See* Opposition, Reply.

## II. LEGAL STANDARD

In determining whether parties have agreed to binding arbitration, "federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (affirming denial of motion to compel arbitration where consumer did not have conspicuous notice of hyperlinked terms and conditions, including mandatory arbitration provision); *Godun v. JustAnswer LLC*, 135 F.4th 699 (9th Cir. 2025) (same); *Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025) (same). "California law governs the issue of contract formation here, where Plaintiff is a California resident and his allegations stem from his experience using Grok in California." *Skaggs v. X.AI, LLC*, No. 26-CV-04550-BLF, 2026 WL 2352969, at *1 (N.D. Cal. Aug. 13, 2026) (citing *Castro v. JPMorgan Chase Bank, N.A.*, No. 14-cv-01539-NC, 2014 WL 2959509, at *2 (N.D. Cal. June 30, 2014) ("The law of the place where a contract was made determines questions related to its validity."); *Topolewski v. Experian Data*

*Corp.*, 736 F. Supp. 3d 818, 824 (C.D. Cal. 2024) (applying California law to determine the validity of a sign-in wrap agreement entered into by California resident)).

In California, a contract is formed where there is "actual or constructive notice of the agreement" and "the parties . . . manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023) (quoting *Berman*, 30 F.4th at 855). These requirements apply equally to an agreement formed over the internet between a website and a user. *See Berman*, 30 F.4th at 857. "Even if a user lacks actual notice of the website's terms, he may nonetheless be bound under the 'inquiry theory' of contract formation so long as '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests [his] assent to those terms.'" *Skaggs*, 2026 WL 2352969, at *2 (quoting *Berman*, 30 F.4th at 856, and applying California law).

## III. DISCUSSION

The parties' dispute turns on whether Rose, when he signed up for a Grok account, had "reasonably conspicuous notice" that he was agreeing to xAI's terms of service, including xAI's arbitration provision. *Skaggs*, 2026 WL 2352969, at *2.

The parties agree that xAI's terms of service were hyperlinked on xAI's account sign-up page when Rose created his Grok account and those terms were presented as a "sign-in wrap" agreement, meaning "the website provides a link to terms of use and indicates that some action may bind the user but does not require that the user actually review those terms." *Chabolla*, 129 F.4th at 1154. The parties also agree that the sign-up screen disclosing xAI's terms of service when Rose created his account appeared as follows:




Barry Decl. ¶ 21; Opposition, at 5.

But the parties disagree as to whether the terms of service notice on the sign-up page was "reasonably conspicuous" under the first prong of the reasonable inquiry notice test. They also disagree as to whether Rose unambiguously manifested his assent to the terms by clicking "Sign up with email," the second option on the sign-in page. *See Berman*, 30 F.4th at 856.

As explained below, the Court finds that the terms of service notice on the Grok account sign-up page was not reasonably conspicuous. Accordingly, the Court finds that Rose did not have reasonable inquiry notice of the xAI terms of service when creating his Grok account, and he

United States District Court
Northern District of California

could not have unambiguously manifested assent to the terms, including the arbitration provision.

**A. Reasonably Conspicuous Notice**

"In determining whether notice [of terms] is reasonably conspicuous, courts must consider both 'the context of the transaction' as well as the 'traditional inquiry related to the visuals involved with the notice, such as font size, text placement, and overall screen design.'" *Skaggs*, 2026 WL 2352969, at *4 (quoting *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025); *see also Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1019 (9th Cir. 2024). "The reasonable notice inquiry 'has always been context-and fact-specific.'" *Id.* (quoting *Oberstein*, 60 F.4th at 515).

**1. Transactional Context**

In determining whether xAI's terms were reasonably conspicuous to Rose when he created an account on xAI's sign in page, the Court first reviews the "context of the transaction." *Chabolla*, 129 F.4th at 1154. If the context of the transaction is one in which a typical user would expect "some sort of continuing relationship" to result from the transaction—like "downloading a mobile game app with in-app purchases, making an account with a ticket purchasing website through a 'full registration process,' [or] . . . sharing biometric information with a dating service"—the user "anticipate[s] that [the] relationship[ is] 'bound by terms, even if not explicitly told.'" *Id.*; *Skaggs*, 2026 WL 2352969, at *4–5 (quoting *Chabolla*, 129 F.4th at 1154); *see Keebaugh*, 100 F.4th at 1020 (mobile game app); *Oberstein*, 60 F.4th at 517 (ticket purchasing website); *Massel v. Successfulmatch.com*, No. 24-1870, 2025 WL 2452371, at *1 (9th Cir. Aug. 26, 2025) (dating service).

But where the user expects the transaction to be "a one-off occurrence"—like buying a flower arrangement or signing up for a $5 trial opportunity—the user does not expect to be bound by contractual terms and is "unlikely to be on the lookout for fine print." *Skaggs*, 2026 WL 2352969, at *4; *Berman*, 30 F.4th at 869 (Baker, J., concurring); *see Serrano v. Open Rd. Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089, 1097 (C.D. Cal. 2023); *Keebaugh*, 100 F.4th at 1020.

Here, Rose created a free Grok account in March 2025 through xAI's sign-up page that invited users to "Create your account." Murphy Decl. ¶ 21. Rose created an account by clicking a

United States District Court
Northern District of California

button below the "Create your account" message that said, "Sign up with email." Murphy Decl. ¶ 13. Rose does not dispute that this sign-up process for a free account, allowing Rose to easily interact with Grok in the future, indicates a "forward-looking relationship" with Grok rather than a single transaction. *See Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 477 (2021) ("The registration process clearly contemplated some sort of continuing relationship between the putative user and Uber, one that would require some terms and conditions. . . .") (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80 (2d Cir. 2017)); *see Oberstein*, 60 F.4th at 516 (distinguishing the user in *Sellers*, 73 Cal. App. 5th 444, who signed up for an account and contemplated a continuing relationship with a user who intends only to start a free trial). A user signing up for a Grok account, like Rose, thus would expect the relationship to be governed by terms.

**2. Visual Aspects of the Notice**

Even where, as here, the transactional context indicates the user will be on the lookout for terms governing the relationship, the user still must be provided notice of the terms in a way that "the court can fairly assume that a reasonably prudent Internet user would have seen [them]." *Berman*, 30 F.4th at 856. This visual analysis is "fact-intensive." *Skaggs*, 2026 WL 2352969, at *5. "[E]ven minor differences in the design elements may make the difference. . . . A hefty dose of common sense goes a long way." *Godun*, 135 F.4th 699, 710 (9th Cir. 2025). "Details including the location of the terms relative to other webpage elements and the font size, color, contrast, and formatting inform whether the advisal is reasonably conspicuous in the context of the website's overall design." *Skaggs*, 2026 WL 2352969, at *5; *see Chabolla*, 129 F.4th at 1157.

Another court in this District recently evaluated whether xAI's terms of service were sufficiently conspicuous to bind a user who was presented with a sign-up screen identical to the sign-up screen at issue here. *See Skaggs*, 2026 WL 2352969, at *5–*7. In *Skaggs*, the court found that the plaintiff, a user of xAI's Grok chatbot, was not bound by the forum selection clause within xAI's terms of service because xAI's sign-up page did not make the terms of service reasonably conspicuous. The Court finds the *Skaggs* visual aspects analysis persuasive and adopts the *Skaggs* court's reasoning here.

In this case, Rose—like the plaintiff in *Skaggs*—argues that xAI's terms are not reasonably

conspicuous because of the placement and font of the notice hyperlinking to xAI's terms of service. *See* Opposition, at 7–12. First, Rose relies on *Chabolla* and *Skaggs* to support the proposition that the hyperlink's placement "at the bottom of the screen, deliberately divorced from the area of the user's focus" renders it insufficiently conspicuous. Opposition, at 9. As the *Skaggs* court summarized:

> In [*Chabolla*], the user was confronted with a box to type her email address and a "Continue" button right below it. *See Chabolla*, 129 F.4th at 1157. Underneath that button was the word "or" followed by another button that said[,] "Sign up with Facebook." *Id.* The notice of terms was found *below* the Facebook button, "on the periphery of where a user intending to use their email would be looking." *Id.* Because "[a] reasonably prudent user would likely click 'Continue' and read no further if she had no intention of using Facebook," the notice was "outside of the user's natural flow." *Id.*

*Skaggs*, 2026 WL 2352969, at *6 (emphasis original).

Here, as in *Skaggs* and *Chabolla*, the notice of the terms of service are placed "well below each of the buttons a user may click on, and a user who clicked 'Sign up with X' would not read the subsequent button options, as those options do not pertain to the user." *Id.* (quotations omitted). Defendants disagree, arguing that the notice is within the "natural flow" of account creation because "a reasonably prudent user surveying a short single-column page to select his sign-up method sees the whole column," including the final line providing notice of the terms of service. Reply, at 13. But just as in *Skaggs*, this argument is unavailing because "it treats all four sign-up buttons as one entity." *Skaggs*, 2026 WL 2352969, at *6. As the *Skaggs* court found:

> The case law makes clear that the visual prong of the notice test must reflect the reasonable user's experience, and here, although a reasonable user is presented with four sign-up methods, he ultimately selects only one. *See, e.g.*, *Chabolla*, 129 F.4th at 1157 (discussing how a reasonable user could sign up for the website by using *either* email or Facebook). Having made that selection, the other sign-up options necessarily become "superfluous." *Id.* Even if a user chose the sign-up option closest to the bottom of the webpage (the option to "Sign up with Google"), Defendant's contention that the notice is "positioned immediately below" is still incorrect. The language that is directly below the "Sign up with Google" button reads: "Already have an account? Sign in[.]" A reasonable user who is on Defendant's sign-up page to *sign up* for a Grok account, which is how Defendant contends Plaintiff agreed to its terms, would likely see that text and read no further because, by definition, it does not pertain to him.



United States District Court
Northern District of California

*Id.*

In this case, Rose signed up for a Grok account using his email address—the second button down in the list of four sign up options. As in *Skaggs*, after Rose selected the "Sign up with email" button, the remaining text on the page became superfluous; Rose had no reason to continue reading. The notice of the "Terms of Service" at the very bottom of the screen was not sufficiently conspicuous during Rose's sign-up process.

Rose further argues that the notice's font, color, and design are not reasonably conspicuous because the notice is the smallest text on the screen, appears in gray and white text against a black background, and is "aesthetically identical to the rest of the sign-up page." Opposition, at 10–11. Rose urges the Court to conclude, as the *Skaggs* court did, that xAI's notice "in a muted font" is not sufficiently conspicuous to provide notice to a reasonable user. *Id.*; *Skaggs*, 2026 WL 2352969, at *7 (agreeing with plaintiff that, similar to the notice in *Berman*, 30 F.4th at 856–57, xAI's "choice of font weighs against reasonable notice because the hyperlink is white (instead of blue), 'merely underlining the hyperlink' is insufficient, and the 'tiny gray' advisal text blends into the background").

Defendants respond that the *Skaggs* court's comparison of xAI's sign-up screen to that in *Berman* is misplaced, because xAI's sign-up page is "uncluttered," which the Ninth Circuit has found weighs in favor of finding sufficiently conspicuous notice. Reply, at 8–9 (citing *Keebaugh*, 100 F.4th at 1021 (notice conspicuous on uncluttered launch screen); *Massel v. Successfulmatch.com*, No. 24-1870, 2025 WL 2452371, at *1–2 (9th Cir. Aug. 26, 2025) (notice conspicuous on uncluttered account-creation screen); *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (notice on "an uncluttered page . . . not hidden or obscured")). The Court agrees that an "uncluttered" page is more likely to focus the reader's attention on a notice of terms of service even where the text of the notice is muted, as here. But the notices analyzed in the controlling Ninth Circuit cases (*Keebaugh*, *Massel*, and *Patrick*) that Defendants cite were both uncluttered *and* required users to explicitly acknowledge the terms—a requirement xAI chose

not to include in its sign-up process here.[2] In *Keebaugh*,

> Directly beneath the operative Play button is the following: "By tapping 'Play' I agree to the Terms of Service" or "By tapping 'Play' I accept the Terms of Use and acknowledge the Privacy Policy," depending on the app's version. The design elements use "a contrasting font color" making the notice legible on the dark background."

100 F.4th at 1020. In *Massel*, the sign-up page disclosed that a "Service Agreement and a separate Privacy Policy govern[ed] the relationship," and expressly required the user to click a check box that had the word "Agree" next to it before continuing. 2025 WL 2452371, at *1. In *Patrick*, to create an account, the user was required to check a box next to the term "Create an Account." Immediately next to the checkbox was the statement, "By creating an account, you agree to our privacy policy and terms of use." 93 F.4th at 474.

The xAI sign-in wrap agreement encountered by Rose requires no similar affirmative acknowledgement of the terms of service before the user proceeds. Rather, xAI permits a user to create an account simply by clicking one of the sign-up options without verifying that the user is aware of—much less agrees to be bound by—the terms of service purportedly governing the relationship. In this case, as in *Skaggs*, Defendants "chose to use a textual notice attached to a hyperlink as opposed to a pure clickwrap or scrollwrap form and then chose to display that notice

---

[2] Defendants point out another recent case in this district in which the court found sufficient notice where a sign-in screen that was "free from clutter" contained "four simple boxes where users can choose how to set up an account, separated by significant white space surrounding the Terms & Conditions notice." *Kroskey v. Elevate Labs, LLC*, No. 5:24-cv-08113-EJD, 2025 WL 1507091, *4 (N.D. Cal. May 27, 2025); Reply, at 9–10. But in *Kroskey*, the sign-in screen lacked any text or images outside the four account set-up boxes, except for the title, "Sign up," and a simple "back" arrow at the top, and the notice of the terms and conditions at the bottom. *Kroskey*, 2025 WL 1507091, *1. Here, xAI's page contains five logos and messages outside the sign-up buttons, which are in the same white color and in larger font than the notice. And again, directly preceding xAI's terms of service notice on the bottom of the page is a message that does not pertain to a user who is signing up for the first time. *Kroskey* is also distinct from this case because in *Kroskey*, the sign-up screen was presented to the user on a mobile device. *See id.* at *1 (analyzing "a mobile meditation application" and enforcing an arbitration clause applicable to defendants' "mobile applications and related services"). Here, Rose signed up for a Grok account on a "personal computer," which typically has a larger screen than a mobile device. Decl. of Devin Rose, ECF No. 23-1. The difference in scale matters when, as here, the disclosure is at the periphery of the screen: a user signing up from a computer screen must survey a larger area to find the disclosure, and is thus less likely to see it, than a user signing up from a mobile device—even if the sign-up screen is uncluttered.

in muted font away from the sign-up buttons. . . . By doing so, [Defendants] ran the risk of a court concluding, as we do here, that the notice was not sufficiently conspicuous." *Skaggs*, 2026 WL 2352969, at *7 (citations and quotations omitted).

**B. Action Manifesting Assent**

"Because the lack of reasonably conspicuous notice necessarily means that a user cannot unambiguously manifest his assent to those terms, the Court need not address the [p]arties' arguments" as to whether Rose unambiguously manifested his assent to xAI's terms. *Skaggs*, 2026 WL 2352969, at *7; *Chabolla*, 129 F.4th at 1158 ("Given that screen 1 fails to provide reasonably conspicuous notice of the Terms of Use, any action the user takes on the page cannot unambiguously manifest her assent to those terms.").

## IV. CONCLUSION

The Court finds that Rose lacked reasonably conspicuous notice of Defendants' terms of service, including xAI's arbitration provision. The Court DENIES Defendants' motion to compel arbitration.

**IT IS SO ORDERED.**

Dated: October 22, 2026

Noël Wise
United States District Judge